## Orient Insurance Co. v. J. T. McKnight.

1. Insurance—*Who is the Proper Party to Insure Property as the Owner.*—F., who was in the employ of McK., attended to the business of buying corn and paid for it with McK.'s money. Everything was done in McK.'s name and when the corn was sold and McK. had taken out of the proceeds the money he had expended, the balance was to be equally divided between him and F. It was held that McK. was the proper party to insure the corn as the owner of it.

2. Same—*When a Company is Estopped to Say that it Did Not Issue its Policy to the Right Party.*—When all the facts concerning the interest of an applicant for insurance are stated to the agent of the company, it can not be heard to say, after a loss has occurred, that it did not issue its policy to the right party.

3. Same—*What is Not a Change of Ownership.*—McK. was the owner of a lot of ear corn in cribs; insured the same against loss by fire and afterward contracted to sell it. He was to shell and haul it to an elevator in Galesburg and cause it to be weighed there and delivered. Before it was shelled it was destroyed by fire. *It was held* there was no transfer of the title of the corn sufficient to avoid the policy of insurance.

4. Same—*What is Not an Increase of the Hazard.*—The fact that the owner of corn in cribs, insured against loss by fire, shelled the same with a machine operated by a steam engine, is not, under the circumstances of this case, such an increase of the hazard as will avoid the policy.

5. Sales—*When a Delivery is Necessary to Complete.*—In a sale of personal property, when anything remains to be done to complete the contract, such as ascertaining the quantity or delivering possession, the title does not pass until these things are done.

6. Waiver—*By Insurance Companies.*—Provisions in a policy of insurance forbidding a waiver of its conditions, may nevertheless be orally waived by the agent of such company.

Assumpsit, on a policy of insurance. Appeal from the Circuit Court of Knox County; the Hon. George W. Thompson, Judge, presiding. Heard in this court at the April term, 1901. Affirmed. Opinion filed July 12, 1901.

D. J. & D. J. Schuyler, Jr., and Carney & Carney, attorneys for appellant.

Williams, Lawrence & Welsh, attorneys for appellee.

Mr. Presiding Justice Dibell delivered the opinion of the court.

The Orient Insurance Company of Hartford, Connecti-

cut, issued to J. T. McKnight a policy upon certain corn cribs and the corn therein, insuring the same against loss and damage by fire in the sum of $1,750. During the term covered by the policy the property was destroyed by fire. McKnight brought this suit upon the policy to recover the insurance. The parties indulged in much special pleading, and issues were formed upon joinders and surrejoinders. The abstract, however, does not set out the pleadings after the declaration, but says no question is raised upon them. It is sufficient, therefore, for us to say that the questions hereinafter discussed were raised by the pleadings. The issues were tried by a jury, and a verdict and a judgment rendered against defendant for $1,398.78, from which judgment defendant prosecutes this appeal.

The policy provides that it shall be void if the interest of the insured in the property is not truly stated therein; also, "this entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the hazard be increased by any means within the control or knowledge of the insured; * * * or if the interest of the insured be other than unconditional and sole ownership." It also contained the following:

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

Defendant claims that McKnight was not sole owner of the corn and cribs, and therefore the policy is void. To this there are two sufficient answers. First, the proof is that McKnight was the owner. Seth Felt was in McKnight's

employ.   He attended to the business of buying the corn.
He paid for it with McKnight's money.   Everything was
done in McKnight's name.   When the corn was sold and
McKnight had received out of the proceeds the money he
had expended, with interest thereon, then the balance, that
is, the net profit, was to be divided equally between Mc-
Knight and Felt, and this share in the profits was to be
Felt's compensation for the work done.   If there were
losses instead of profits, then Felt was to share in the losses.
It is clear from the testimony that the corn was bought
wholly with McKnight's money, and that he alone had title
thereto.   Second, all the facts were stated to the agent of
the insurance company when application was made for the
policy, and defendant can not now be heard to say that it
did not issue the policy to the right party.

Defendant claims that McKnight had transferred the
title to the corn before this fire occurred.   The corn had
been bought and placed in the cribs in the years 1896, 1897
and 1898, and at the time of the fire was being shelled and
hauled to an elevator at Galesburg.   McKnight had con-
tracted to sell the corn; he had not contracted to sell the
ear corn in the cribs, but he was to shell it and to haul
it to the elevator in Galesburg and cause it to be there
weighed, and deliver it there.   There was something to be
done to the corn as a condition precedent to the transfer of
title to the owner of the elevator, namely, shelling it, haul-
ing it to the elevator and weighing it.

It is said in 1 Benjamin on Sales, section 311, that the
presumption of law is that the contract is only executory
when something remains to be done to the goods by the
vendor, either to put them into a deliverable shape, or to
ascertain the price; and where something remains to be
done by the vendor it is presumed the parties intended to
make the transfer of the property dependent upon the per-
formance of the things yet to be done as a condition pre-
cedent.   In Frost v. Woodruff, 54 Ill. 155, the court said :
" In a sale of personal property, when anything remains to
be done to complete the contract, such as ascertaining

quantity or delivering possession, the title does not pass till these things are done." (Richardson v. Rardin, 88 Ill. 124.) No title to this unshelled corn remaining in the cribs had passed to the owner of the elevator, because the quantity was yet to be ascertained by weighing and the corn was yet to be shelled and put into a deliverable shape, and the corn was then to be delivered.

Defendant claims the hazard had been increased by the use of a steam sheller in shelling this corn, and that permission to operate the steam sheller had not been indorsed in writing upon the policy, and therefore the policy is void. The corn, when insured, stood in five cribs, standing some distance from each other, and isolated from everything likely to result in fire. At the time of the fire plaintiff had been shelling corn from these cribs for ten days or two weeks. The sheller was operated by a steam engine, and the cobs were used for fuel to run the engine. Defendant introduced a number of insurance experts who testified the hazard was thereby increased. Plaintiff introduced some testimony in rebuttal tending to show the hazard was not increased. If by increase of hazard is meant increased liability to take fire and to be destroyed by fire, we can not doubt that the present record shows the hazard was increased, and if the case depends upon that proposition the judgment ought to be reversed. The parties in charge of the shelling were sufficiently fearful of fire so that during the first week they kept a watch there at night to look out for fire. Then a heavy rain fell, and after that a watchman was not kept there at night. The operator of the shelling machine was accustomed to put some one on the roof of the cribs near by the engine at night when he stopped work, to see if there were any sparks or fire upon the roof. Fire did catch several times during these two weeks, in the day time and in the evening, in the cobs left piled up. The corn was old and dry, and there was more or less husks and silk, and it is manifest that sparks might be deposited in a pile of cobs and smolder for a considerable time, and then break out, and it is too plain for question that there was

Orient Ins. Co v. McKnight.

more danger that fire would break out and destroy this property while this sheller and engine were operating there than before the sheller was brought there. Plaintiff, however, proved that he notified the agent of the insurance company that he was going to shell this corn with a steam sheller, and that the agent said " All right." This evidence was subject to the criticism that nothing of the kind was testified to at a former trial of the case, and that plaintiff when first narrating his conversation at this trial, testified he told the insurance agent he was going to shell his corn, but did not say at first that he told the agent he was going to shell it with a steam sheller. He did, however, so testify before he left the stand, and the insurance agent, who was a witness, was not asked to contradict him, and that fact must be considered proved. In our judgment this must be considered as an assent by the insurance company or its agent to having the risk thus increased by the use of a steam sheller in shelling the corn for market. True, the provision of the policy above quoted does not permit the waiver of any provision or condition of the policy except it be indorsed upon the policy in writing, and authorities in other States are cited to show that in those States these provisions are rigidly enforced by the courts. But it is the doctrine of the courts of this State that such provisions forbidding a waiver may themselves be orally waived by the agent of the company. (Dwellinghouse Ins. Co. v. Dowdall, 159 Ill. 179; Phenix Ins. Co. v. Caldwell, 187 Ill. 73.) We are therefore of opinion that the insurance company assented to this increase of hazard in a manner binding upon the company in this State. Plaintiff did not specially plead a waiver of this condition in reference to increase of hazard. Waiver, however, although it may be specially pleaded, need not be in order to avail the party. (German Fire Ins. Co. v. Grunert, 112 Ill. 68, 76.)

Defendant argues that it was error to permit plaintiff to prove in rebuttal that the rate of insurance on the cribs and corn would not be increased by the operation of a steam sheller. Defendant had proved by numerous wit-

nesses that the rate of insurance would be largely increased by the use of the steam sheller, and defendant can not be heard to say that it was not competent for plaintiff to rebut that which it had proved in defense. Moreover, proof that the rate would not be increased was proof tending to show that the hazard would not be increased. Defendant also argues that the court erred in refusing to permit it to put in evidence a statute of the State of New York establishing a standard form of policy, being, in fact, substantially the form of policy used in this case. Defendant is a Connecticut corporation. The insurance was written on property situated in Illinois, and the suit was brought in Illinois. We fail to see how a statute of New York would have any effect upon the rights of the parties under this policy. This policy does not anywhere contain, either on its face or in the indorsements upon its back, any statement that it is issued under any law of the State of New York.

The court was somewhat inconsistent in some of its rulings upon instructions. Plaintiff sought to prove in rebuttal that it was usual and customary in that locality in handling and preparing for market, corn cribbed as this corn was, to shell it with a steam sheller. The court refused to permit this evidence to be introduced, and yet in several instructions given for plaintiff, told the jury that the plaintiff had a right to do with the corn in question everything that is usual and customary in handling and preparing for market, corn cribbed as this corn was, and that such handling of the corn insured would not avoid the policy, unless the jury believed from the evidence that the risk or hazard was increased thereby. While this was inconsistent with the court's ruling upon the evidence, yet we fail to see how these instructions could harm the defendant, for it is true, as a matter of law, that plaintiff had a right to handle his corn as he saw fit, so that the risk or hazard was not increased thereby. By instruction No. 10, given for defendant, the court told the jury to disregard the statement of the plaintiff to the insurance agent that he intended to shell the corn covered by the policy in question by steam. For the rea-

sons already stated, we think the evidence introduced by the plaintiff on that subject was competent, and that the court should not have given this instruction. But this was an error in favor of defendant, and not against it, and therefore will not avail to reverse the judgment. As we are of opinion that the uncontradicted evidence is that defendant's agent waived the provision of the policy with reference to the increase of hazard, we conclude that the proof warranted the verdict. The judgment is therefore affirmed.